### FREEMAN v. MILLER.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. PARTNERSHIP (§ 53*)—ACTION—EVIDENCE—SUFFICIENCY.

In an action to dissolve a partnership, evidence *held* to show that plaintiff was not a partner, but merely that his compensation was to depend upon profits; it appearing that he had no share in any possible losses.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 76, 79; Dec. Dig. § 53.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ACCOUNT (§ 12*)—RIGHT TO ACCOUNTING.

    Where plaintiff was not a member of a firm, but his compensation was measured by the profits, he is not entitled to maintain an action in equity for an accounting, but should ·bring an action at law and have an accounting therein.

    [Ed. Note.—For other cases, see Account, Cent. Dig. §§ 62–70; Dec. Dig. § 12.*]

3. TRIAL (§ 11*)—CHANGE OF THEORY OF CAUSE OF ACTION—TRANSFER ON DOCKET.

    Where plaintiff brought an action for the dissolution of a partnership which he claimed existed between himself and defendant, and for an accounting, and the court found against him, his equitable action should be dismissed, and cannot be continued on the Trial Term calendar as an action at law for compensation merely because he introduced evidence that defendant owed him unpaid compensation, for that evidence was admissible under the issue in respect to partnership, and therefore plaintiff cannot have it considered as tending to establish an action at law and thus change his theory of action.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 28–30; Dec. Dig. § 11.*]

Appeal from Special Term, New York County.

Action for the dissolution of a partnership and an accounting by William C. Freeman against Max Miller. From an interlocutory judgment ordering an accounting, defendant appeals. Reversed, and complaint ordered dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Alexander Fox, of New York City, for appellant.

Rollins & Rollins, of New York City (Fulton J. Redman, of New York City, of counsel), for respondent.

LAUGHLIN, J. This is an action for the dissolution of a copartnership alleged to have been formed between the parties on or about the 12th day of July, 1909, to conduct a general commercial printing business under the name and style of Madison Square Press, and for an accounting, and for the appointment of a receiver.

The plaintiff alleges that it was agreed that each of the parties should devote his entire time to the business, and that the plaintiff should receive one-quarter and the defendant three-quarters of the profits, and that by an agreement subsequently made their proportionate interests were changed to one-third for the plaintiff and two-thirds for the defendant. The material allegations of the complaint were put in issue by the answer. The cause was placed upon the Special Term calendar for the trial of equity causes, and the plaintiff throughout the trial appears to have adhered to the theory of his action as outlined in the complaint. The plaintiff concededly contributed no cash or other property as capital, and there is no evidence tending to show an agreement between the parties to share losses, and there was no writing evidencing any agreement between them, although, according to the testimony of the plaintiff, he expected that the agreement would be reduced to writing, and shortly after commencing business in 1909 and in the fall of that year he requested that it be so reduced.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff testified, and there is other evidence tending to corroborate him, that it was agreed between him and the defendant that they would engage in business together and that at the outset it was agreed that his interest should be one-quarter; that machinery and other equipment for conducting a printing business was purchased by and in the name of the defendant for which he paid part cash and gave his notes and a chattel mortgage as security for the balance; that the lease of premises on which to conduct the business was taken in defendant's name also, and a bank account opened in his name; that the duties he performed consisted principally of soliciting orders, reading proof, keeping the books, and looking after accounts; that about one year after they commenced business he threatened to withdraw from the business, evidently because the defendant had not acknowledged the partnership relation in writing, and at that time the defendant agreed to increase his share to one-third and promised to have the business incorporated as soon as the machinery was paid for, which would be in December thereafter; that in November, 1910, the question of incorporating the business was discussed, and a formal certificate of incorporation was prepared and signed by the parties and by one Buggeln, which provided that the capital stock should consist of 2,000 shares, the plaintiff and Buggeln subscribing to 10 shares each and the defendant to the remaining 1,980, but the certificate was returned by the Secretary of State on the ground that the proposed name was similar to that of an existing corporation; that it was agreed that each should draw the same amount from the business and he drew at the outset $10 per week, which was from time to time increased until he was drawing $24 per week; that in the month of June, 1911, defendant again promised to have the business incorporated and to protect him, and inasmuch as this was not done he demanded an accounting in the month of August, 1911, and thereafter performed no further services and remained away from the business. It does not appear how the plaintiff drew the weekly payments.

It appeared on the cross-examination of the plaintiff that on proceedings supplementary to execution on a judgment recovered against him he was asked with reference to his connection with or employment in the business conducted by the defendant in the name of Madison Square Press, and he testified that he had no interest in the business and was merely employed as an outside salesman on a commission basis and had no regular salary or drawing account. He attempted to explain this testimony on the ground that stress of circumstances and the attitude of the defendant compelled him to so testify. He also admitted that he went to the office of his uncle, who was a member of the bar, with the defendant for the purpose of having prepared a certificate to enable defendant to conduct business under the name of Madison Square Press, and that he understood the contents of the certificate, which was to the effect that the defendant was the sole proprietor of the business. He claims that he desired to have his name incorporated in the certificate, but that the defendant would not consent thereto.

The defendant testified that he employed the plaintiff on a weekly salary and that there was no copartnership between them, and his testimony is corroborated by other evidence. There is, however, evidence in the record tending to show that, although the plaintiff received regular weekly payments, the agreement was that he should receive and be paid for his services during the first period one-quarter of the profits and thereafter one-third of the profits of the business.

[1, 2] The trial court found that the parties were not copartners, but that the defendant employed the plaintiff and agreed to pay him "as compensation" for his services "one-quarter of the net profits" of the business for the first period and "one-third of the net profits" during the remainder of the time. The learned trial justice evidently was of the opinion that this gave the plaintiff an interest in the profits of the business *as such,* and entitled him to maintain this action for an accounting with respect to the profits, and such an accounting was decreed by the interlocutory judgment. We are of opinion that the evidence upon which this finding is based does not show an agreement between the parties by which the defendant was to have an interest in the business or in the profits *as such,* but merely that his *compensation* was to be *measured by profits* and the findings should be so construed. Unlike the case of Weldon v. Brown, 84 App. Div. 482, 82 N. Y. Supp. 1051, which the majority of this court regarded as a suit in equity, the parties here were not jointly interested in the venture, for there was necessarily risk of loss in the business in question and the plaintiff incurred no liability with respect thereto, and, moreover, in the case at bar, it was evidently understood from the outset that the plaintiff was to have a drawing account, so that compensation for his services did not depend entirely upon whether or not profits were realized, and the percentage of the profits which the defendant agreed to give to the plaintiff merely represented the maximum compensation which the plaintiff should receive. The case fairly falls within the well-established rule that an action for compensation measured by the profits of a business is an action at law and not a suit in equity in which the plaintiff is entitled to an accounting, and, although it becomes necessary to take an account to determine the amount which the plaintiff is entitled to recover, that is incidental and is not an equitable accounting. Hathaway v. Clendening, 135 App. Div. 407, 119 N. Y. Supp. 984; Hart v. L. D. Garrett Co., 87 App. Div. 536, 84 N. Y. Supp. 774; Everett v. De Fontaine, 78 App. Div. 219, 79 N. Y. Supp. 692; Lee v. Washburn, 80 App. Div. 413, 80 N. Y. Supp. 1040; Kirkwood v. Smith, 82 App. Div. 411, 81 N. Y. Supp. 891; Del Genovese v. Del Genovese, 149 App. Div. 266, 133 N. Y. Supp. 765. See, also, Marvin v. Brooks, 94 N. Y. 71.

It follows from these views that the interlocutory judgment cannot be sustained; but this gives rise to another question, namely, whether the action should be retained as one at law and sent to the Trial Term calendar, or whether the complaint should be dismissed.

[3] The evidence, which tends to show that the plaintiff may have a cause of action at law to recover a balance owing for compensation

measured by a percentage of the profits, was admissible under the issue with respect to the existence of the copartnership, and therefore the plaintiff is not entitled to have it considered as tending to establish a cause of action at law and to change this action from a suit in equity to an action at law; and since the cause of action alleged depended upon the existence of a copartnership, and that issue was found adversely to the plaintiff on ample evidence, his complaint should have been dismissed. Arnold v. Angell, 62 N. Y. 508; People's Bank v. Mitchell, 73 N. Y. 406; Clark v. Post, 113 N. Y. 17, 20 N. E. 573; Skilton et al. v. Payne et al., 18 Misc. Rep. 332, 42 N. Y. Supp. 111; Stevens v. Mayor, Aldermen, etc., 84 N. Y. 298; Loeb v. Supreme Lodge, 198 N. Y. 180, 91 N. E. 547; Hawes v. Dobbs (Com. Pl.) 18 N. Y. Supp. 123; Bowen v. Webster, 3 App. Div. 86, 38 N. Y. Supp. 917; Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751; Smith v. Bodine, 74 N. Y. 34.

It follows, therefore, that so much of findings Nos. 2 and 3 as purport to find that the compensation which plaintiff was to receive for his services was one-quarter and one-third of the net profits respectively should be stricken out, it not being material to a decision of the issues in this action to decide the precise measure of the plaintiff's compensation, and the conclusions of law should be stricken from the decisions, and that there should be substituted therefor, on the facts as found, a conclusion of law to the effect that the defendant is entitled to judgment dismissing the complaint upon the merits with costs, but without prejudice to an action at law to recover any compensation to which he may be entitled; and that the interlocutory judgment should be reversed, with costs, and final judgment entered in favor of the defendant dismissing the complaint upon the merits, with costs, but without prejudice to an action at law by the plaintiff for compensation for his services. All concur.